HIRAM E. WELTON *vs.* THE TOWN OF WOLCOTT.

The owner of a mill-dam built a wall of stone twenty-three feet above the dam and filled the intervening space with earth, leaving a culvert for the water to pass through, not intending at that time to make any further use of the dam for mill purposes. He then dedicated the embankment for a highway across the river, and it was accepted by the public, and used for several years until it was carried away by a flood. Held that the town in repairing was not bound to restore the embankment, but might construct a bridge for crossing at that place.

TRESPASS ON THE CASE for interfering with the flow of water to a mill, for injuries to belting therein, and for obstructing access to land; also a petition for an injunction against the building of a bridge; brought to the Superior Court, and on facts found, both cases reserved for the advice of this court. The facts are sufficiently stated in the opinion.

*W. Cothren,* for the plaintiff.

*J. C. Webster* and *J. O'Neil,* for the defendants.

PARDEE, J. In 1822, Erastus Welton, grandfather of the plaintiff, owned land in the town of Wolcott upon both sides of a stream which he had ponded and turned upon a

mill-wheel. In that year he built a wall of stone about twenty-three feet above the old dam and filled the intervening space with earth, the water passing through a culvert; and he changed the location of a highway which theretofore had crossed the stream below his dam, so that it thereafter crossed upon this causeway. Concerning this the court finds as follows:—" There was a sufficient opening through said causeway thus constructed for the water of said stream to pass freely and there were no indications of an intention ever again to use said mill-site and stream of water for a mill privilege. I find that the then owner of said premises intended to dedicate said causeway to the public for a highway, and that the public used the same as a highway from that time until the year 1875, (when said use was interrupted by a flood as hereinafter mentioned,) without interruption or objection. I therefore find that the same was accepted by the public, and was in the year 1875 and now is a public highway by dedication and acceptance, there never having been any lay-out." And in a supplemental finding the court says as follows:—" Whether the dedication of the top of the old dam for the purposes of a highway carried with it a right to the town to repair the highway, construct a bridge and erect a railing, is a question of law for the court. I do not find that such a right was dedicated unless included in the dedication for a highway. The flume carrying the water to the mill was not disturbed by the freshet, and the dedication for a highway was not intended to interfere with the water-privilege and was not supposed to have that effect."

Not long thereafter Welton turned the water upon a wheel carrying a grindstone and subsequently a flax-brake. In or near the year 1837 he built a saw mill there, subsequently raising the pond and adding new wheels carrying cider, grist and saw mills. The plaintiff now owns the site and applies the water to one or more of these uses. In 1875 by the use of flush-boards he raised the water; and, a heavy rain falling, a large portion of the causeway was washed away, and the culvert was somewhat injured but

not destroyed. He then proposed to share with the town the expense of constructing an embankment. Failing an agreement, the town built a bridge upon abutments about thirty-eight feet apart over the space formerly occupied by the causeway, not disturbing the culvert, and the court finds that " after the bridge was completed the agents of the town constructed a railing on the lower side for the protection of the public travel. Such railing was necessary, and in this the town did not act unreasonably. The effect of the railing was to make it somewhat more difficult for the plaintiff to fill in below for a log-way. But that was not the fault of the town." The plaintiff then built a wall from one abutment to the other, at the lower side thereof, so locating the overflow as to discharge water directly against one of the abutments, and this finding its way along the open space under the bridge into his wheel-pit, injured his belting. The court finds that at small additional cost he could have so constructed the overflow and culvert as to carry the water through the embankment outside of the abutment or through the filling, in either case without injury to himself. It also expressly finds that the injury to his property was the " result of his own negligence and folly." The court also says that " it cannot say that the town acted unreasonably towards the plaintiff in constructing a bridge, although the preponderance of evidence is that a solid filling of earth and stone would have been less expensive ; " and that if the plaintiff and the town had " agreed to work together and re-construct the embankment the highway might have been restored at less expense to the town and to the advantage of the plaintiff."

Upon the finding therefore in 1822 the then owner in fee of the *locus in quo* made an unqualified appropriation of it to the use of the public as a highway ; the public accepted it for such use, acquiring thereby an easement or right of passage over the soil ; he retaining the fee, together with all rights of property not inconsistent with the permission given. By such acceptance the public imposed upon itself the duty

of maintaining the way in a condition of reasonable convenience and safety for travelers.   There went therefore with the irrevocable dedication the equally irrevocable permission to the public to exercise its discretion as to the manner in which it would perform that duty.   If the rains washed the way it came under no obligation to restore it to its previous form or condition; if the floods carried away the embankment, it came under no obligation to re-build; it performed its whole duty in providing a safe and convenient crossing.   In doing this it might consult only its own interests or preferences, with a proviso sufficient for the purposes of this case, namely, that it does not purposely do any positive and unnecessary injury to the reserved rights of the owner.   Merely not to have added to the value of those rights is not a wrong cognizable by a court of law.   Inasmuch as the court finds that "in the present case the plaintiff made no claim for damages by reason of trespasses to land outside the limits of the highway," this view renders the other questions raised unimportant.

The Superior Court is advised to render judgment for the defendant, both in the action at law and in the bill in equity.

In this opinion the other judges concurred.